**Bobbi PILE (as Executrix of the Estate of Theresa Ann Foltz, Deceased), Appellant,**

v.

**CITY OF BRANDENBURG and John Miller, Officer, Appellees.**

**No. 2005–SC–0047–DG.**

Supreme Court of Kentucky.

Dec. 21, 2006.

As Corrected on Denial of Rehearing March 22, 2007.

Brett Butler, Louisville, Counsel for Appellant.

David Paul Bowles, Landrum & Shouse LLP, Robert Thomas Watson, Landrum & Shouse LLP, Louisville, Counsel for Appellees.

Opinion of the Court by Justice WINTERSHEIMER.

### REVERSING

This appeal is from an opinion of the Court of Appeals affirming the summary judgment of the trial court for the city and a police officer in a wrongful death action.

The questions presented are whether the controlling decision in this case is *Jones v. Lathram;* whether the Court of Appeals erred in not considering discretionary acts as distinguished from ministerial acts; whether a special relationship is necessary for negligence claims of this nature; whether the officer was negligent per se; whether the active operating, controlling and ownership of a motor vehicle is ministerial, and whether there was a superseding cause for the injury to and death of the victim.

Theresa Ann Foltz was killed on July 12, 2000 when she drove around a curve on Highway 1638 and was struck head-on by a motor vehicle owned by the City of Brandenburg and assigned to Officer John Miller. The vehicle was operated at the time of the accident by Timothy Blackwell, a handcuffed prisoner in the vehicle.

Officer Miller had been dispatched to the scene of an accident at about 9:45 p.m. on July 12. Off-duty Meade County Deputy Jailer Embrey witnessed the accident in which intoxicated driver Blackwell

wrecked his van and traveled backwards down an embankment near the Embrey residence. The 39–year–old Blackwell attempted to flee the scene by foot, but Embrey managed to apprehend him and then place him in handcuffs before summoning police. Officer Miller, a young policeman with several months of experience, answered the call in his city police cruiser.

When preliminary breath testing of Blackwell revealed a reading of at least .287, Blackwell allegedly was secured in handcuffs and was placed in a 3 point restraint in the back of the police cruiser which was separated from the front seat by a plexiglass shield. Officer Miller was driving the cruiser and Embrey was a passenger in the front seat as they left the Embrey residence enroute to the jail. Officer Miller stopped the police cruiser in the highway, got out to go down the embankment to gather information regarding the van, and left the keys in the ignition with the engine and the emergency lights on. This in effect left the cruiser in running condition. Shortly thereafter, Embrey also got out and went to assist with traffic control on the highway. As the sole remaining occupant of the cruiser, Blackwell somehow was able to maneuver into the front seat and proceeded to drive the cruiser away at a high rate of speed. Within minutes, the police cruiser crossed the center line and crashed head on into the car driven by 57–year–old Theresa Ann Foltz. Both the still handcuffed Blackwell and Mrs. Foltz died at the scene.

The circuit judge granted the motion of the city and the officer for a summary judgment based on the reasoning of *City of Florence v. Chipman*, 38 S.W.3d 387 (Ky.2001), as to foreseeability. The circuit judge also determined that the taking of the vehicle by Blackwell was a superseding intervening cause of the death of Mrs.

Foltz, thereby precluding recovery from the city or Officer Miller, citing *Frank v. Ralston*, 145 F.Supp. 294 (W.D.Ky.1956)

Both the circuit judge and the majority of the Court of Appeals panel acknowledged no duty on the part of either of the defendants absent any "special relationship" as considered in the 42 U.S.C. § 1983 case of *Ashby v. City of Louisville*, 841 S.W.2d 184 (Ky.App.1992). The majority opinion of the Court of Appeals held that there is a public policy limiting the tort liability of officers. This Court accepted discretionary review.

## Standard of Review

■ Summary judgment procedure authorized by CR 56.01 et seq. is intended to expedite the disposition of cases and if the grounds provided by the rule are established, it is the responsibility of the trial judge to render an appropriate decision. The grounds for such a judgment are: 1) there is no genuine issue as to any material fact; and 2) the moving party is entitled to a judgment as a matter of law. The summary judgment procedure is not a substitute for trial. *See Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255 (Ky.1985); *Steelvest Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991); *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273 (Ky.1991).

■ The circuit judge must examine the evidentiary matter, not to decide an issue of fact, but to discover if a real or genuine issue exists. All doubts are to be resolved in favor of the party opposing the motion. The movant should not succeed unless a right to judgment is shown with such clarity that there is no room left for controversy and it is established that the adverse party cannot prevail under any circumstances. Here, the facts are not in question. Thus, we must consider the sec-

ond prong of the rule as to whether the moving party is entitled to a judgment as a matter of law.

It has long been considered that it is necessary to base a case of negligence on a showing of a breach of duty and causative factors. In order to determine whether a duty exists and has been breached, foreseeability of harm is an essential element. It is not necessary to know the identity of the person endangered or the scope of such danger.

■ The obligation of a police officer in regard to individual citizens is not founded on foreseeability alone but rather upon the existence of a special relationship to the person likely to be injured. Two conditions are required. 1) The victim must have been in state custody or otherwise restrained by the state at the time the injury producing act occurred, and 2) the violence or other offensive conduct must have been committed by a state actor.

Here, there is no question that Blackwell was in custody. Then our inquiry must proceed to whether the violence was committed by what can be defined as a state actor. Our examination focuses on the police officer and his responsibilities to third parties in the performance of his duty. The operation of a police cruiser is ministerial in nature. The operation of the vehicle is a daily routine responsibility, not a discretionary act and is subject to the applicable regulations of the city police department as well as statutory traffic regulations. Negligent operation of an emergency vehicle by a police officer who violates existing police procedures and regulations, or appropriate statutes, is actionable and is clearly outside of the scope of the "special relationship doctrine." KRS 189.430, provides in pertinent part that "no person operating or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition and removing the key...." The clear purpose of the statute is to prevent the theft or unauthorized use of the vehicle and for the protection and safety of the general public. The victim here was a member of that protected class.

## I. *Jones v. Lathram*

■ In *Jones v. Lathram*, 150 S.W.3d 50 (Ky.2005), Officer Lathram was operating a police cruiser at the time of the fatal collision. This Court determined that the officer undertook a ministerial act in responding to an emergency call for assistance from a fellow officer. The court stated that the act of safely driving a police cruiser, even in an emergency, is not an act that typically requires any deliberation or exercise of judgment. This court in a unanimous decision reversed the affirmance of a summary judgment and held that the officer was not entitled to qualified official immunity from liability.

■ The act of safely controlling a police cruiser is not a discretionary act, but rather a ministerial function. In this case, Officer Miller had control of the operation of his police cruiser. Thus, it would be a ministerial act requiring reactive decisions based on duty, training and overall consideration of public safety. The question of whether Officer Miller was negligent in operating his police cruiser under all the facts and circumstances is a matter for the jury or trier of fact. Thus, summary judgment was inappropriate in this case. The Court of Appeals also acknowledged that Officer Miller was obviously negligent in the performance of his duty at the time in question.

## II. Discretionary versus Ministerial Acts

In *Jones v. Lathram*, the language of *Yanero v. Davis*, 65 S.W.3d 510 (2001) provides in part that an officer or employ-

ee is afforded no immunity for tort liability for the negligent performance of a ministerial act, i.e., one that requires only obedience to the orders of others or whether the officer's duty is absolute, certain and imperative, involving merely execution of specific acts arising from a fixed and designated fact.

Any local government such as the City of Brandenburg could be liable for negligence arising out of the acts or omissions of its employees in the discharge of their ministerial duties. *See* KRS 65.2003(3). The negligent operation of an emergency vehicle by a police officer which violates existing police procedures or regulations or statutory traffic regulations is certainly actionable and outside the scope of the common law doctrine of "special relationship" relied on by the City and Officer Miller.

> KRS 189.430(3) states in pertinent part: No person operating or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition and removing the key. . . .

■ The clear purpose of this statute is to prevent theft or unauthorized use of a motor vehicle as well as for the protection and safety of the general public. *Cf.* OAG 79.559. If this statute had been properly followed, the tragic accident would not have occurred. As noted in the dissent by Judge Taylor, police officers are exempt in certain emergency situations from the application of traffic regulations as noted in KRS 189.940. Specific statutes give police exemptions from certain other traffic regulations as noted in KRS 189.450(7). However, in this case there is no statutory exception or exemption that relieves Officer Miller from KRS 189.430(3). The "special relationships" doctrine has no application to the issue of whether Officer Miller may disregard applicable traffic laws and regulations that he was obligated to obey in the performance of his duties.

The question of whether Officer Miller was negligent in the operation of his police cruiser is reserved for the jury.

### III. Negligence Per Se

■ As urged by the Foltz estate, negligence per se is merely a negligent claim with a statutory standard of care substituted for the common law standard of care. *See Real Estate Marketing, Inc. v. Franz,* 885 S.W.2d 921 (Ky.1994). Clearly, Officer Miller violated the statute by leaving the vehicle without first stopping the engine or removing the ignition key. KRS 446.070 provides that "a person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty of forfeiture is imposed for such violation."

### IV. Superseding Cause

■ The appellees argue that even if it was determined that the officer owed a duty of care to the deceased victim, the tortious conduct of Timothy Blackwell was a superseding cause of the injury and death. They contend that but for the unlawful conduct of Blackwell, the victim would not have died in this accident and that the fatal consequences were outside of the control of Miller after Blackwell stole the police cruiser and drove it in a reckless manner so as to crash head on. They further claim that the question of foreseeability is without merit because the officer could not contemplate that the prisoner would steal the cruiser and kill someone. The appellees maintain that a superseding cause is an independent force that relieves the original actor from liability. *See NKC Hospitals, Inc. v. Anthony,* 849 S.W.2d 564 (Ky.App.1993); *Bruck v. Thompson,* 131

S.W.3d 764 (Ky.App.2004). We do not agree.

*Com., Transportation Cabinet v. Babbitt,* 172 S.W.3d 786 (Ky.2005), provides an instructive analysis of the superseding cause doctrine. *Babbitt, supra,* involves the claims of three individuals denied by the Board of Claims. The case involved the erection of guardrails, barriers and rumble strips that were intended as warnings to motorists. It states that the rationale for the doctrine of superseding cause has been substantially diminished by the adoption of comparative negligence, and ultimately holds that the negligence of a motorist in driving a vehicle off the roadway was not a superseding cause so as to prevent liability on the part of the transportation cabinet. Quoting the Restatement (Second) of Torts § 440 (1965), the opinion asserts that a superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a factor in bringing about. *See also Donegan v. Denney,* 457 S.W.2d 953 (Ky.1970).

*Bruck, supra,* is distinguishable on its facts. As noted in *Anthony, supra,* the intervening act or event must be of independent origin, unassociated with the original act. Here, the officer had an intoxicated person handcuffed in the back of his cruiser. The officer left the cruiser with the key in the ignition and the engine running, arguing that it was necessary to leave the vehicle so that the air conditioner would be in operation and to power the emergency lights on the vehicle. Another guide in assessing these situations noted in *Anthony* is that the intervening act or event must, itself, be capable of bringing about the injury, and that the intervening act must not have been reasonably foreseeable by the original actor.

It is clear that leaving the key in the vehicle was a negligent act which created the opportunity for the prisoner to escape with the vehicle and operate it in the fashion which caused the ultimate fatality. *Bruck* involved a situation where the key was left in the ignition while the vehicle was in the driveway and determined that the statute did not apply to a private driveway. Here, the officer backed out of the driveway and stopped to pick up a tennis shoe belonging to the prisoner. The officer then drove further up the road to check on the van to obtain license information. He then left the motor running with the key in the ignition so as to allow the air conditioning to continue because the temperature was in the mid–70's and to keep the battery from running down.

Under all the circumstances, we must conclude that the tortious conduct of Blackwell was not an intervening or superseding cause of the fatal accident.

### V. *Chipman, Fryman* and *Ashby*

The cases cited by the majority of the Court of Appeals involve different issues and are clearly distinguishable on their facts. Reliance on the *City of Florence v. Chipman, supra,* and *Fryman v. Harrison,* 896 S.W.2d 908 (Ky.1995), is misplaced. All owners, operators and persons in control of motor vehicles owe a duty to all other persons using the roadway pursuant to KRS 304.39, the Motor Vehicle Reparations Act. There is nothing in that Act that exonerates police officers from the duty of care not to be negligent in the operation or control of their vehicle.

*Chipman* has to do with whether or not an officer should have arrested someone. The fact that the officer has no duty to protect another person from a crime or accident is not an issue here. The negligence of Officer Miller and the violation of the statute made it possible for Blackwell

to take the vehicle and cause it to crash. This is not a question of whether the police should have arrested someone. The case here raises the issue of ordinary care in violation of the statute.

*Fryman, supra,* relates to a criminal defendant being released from jail without a bail bond being properly posted. The defendant was released from jail and approximately two months later assaulted the victim. Harrison argued that the jailer and the clerk were negligent in the completion of the bond revocation documents and that the jailer was negligent in releasing the prisoner. Once again, in this situation, Officer Miller violated the statutory requirement of leaving the keys in the ignition. *Ashby* notes that in Kentucky personal liability for a public officer's or public employee's negligent performance of the duty depends in part on whether the powers or duties in question were ministerial or discretionary. We believe the responsibilities here were ministerial rather than discretionary. Thus, we further conclude that the authorities cited do not apply.

The decision of the Court of Appeals and the circuit court is reversed. The public duty doctrine does not provide a shield for the city or the officer from liability. The responsibility of the officer was to remove the key from the vehicle, and the ultimate theft of the car by the prisoner and resulting fatal accident was not an intervening or superseding event. Summary judgment was improper because the moving party was not entitled to a judgment as a matter of law.

This matter is remanded to the circuit court for trial.

LAMBERT, C.J., GRAVES and SCOTT, JJ., concur.

McANULTY, J., dissents by separate opinion and is joined by NOBLE, J.

MINTON, J., not sitting.

McANULTY, Justice, dissenting.

Respectfully, I dissent. I believe that the major difficulty in resolving this case stems from the fact that the wrong party was sued. Officer Miller had placed the prisoner in the custody of Deputy Embrey, and Deputy Embrey *assumed control* of the prisoner. It follows that Officer Miller cannot be regarded as a cause of the accident. Additionally, the actions of the prisoner were a superseding act which precludes liability for the accident on the part of Officer Miller or the City.

The rule is stated that, "[a] superseding cause is an intervening independent force; however, an intervening cause is not necessarily a superseding cause. ... if the resultant injury is reasonably foreseeable from the view of the original actor, then the other factors causing to bring about the injury are not a superseding cause." *NKC Hospitals, Inc. v. Anthony,* 849 S.W.2d 564, 568 (Ky.App.1993). In the case at bar, the resulting injury was not foreseeable to the original actor—that being Officer Miller. He handcuffed his prisoner, put him in the back seat of the police vehicle with a Plexiglas divider in place, and left him in the custody of another law enforcement officer. It was not foreseeable to Officer Miller that the prisoner would then be left alone and allowed to escape and cause the ensuing accident. He did not leave the prisoner completely alone. He thus did not commit an act of negligence. Therefore, the events which followed must surely be considered an independent chain of events which were not foreseeable.

Further, I do not believe the majority opinion convincingly distinguishes this case from those in which the special relation-

ship test was applied. The special relationship test is an additional test when the issue is whether law enforcement failed to protect by their acts or omissions. I regard the real issue in the case at bar as whether Mrs. Foltz was not protected by the law enforcement officials from a drunk driver. Thus, the special relationship test must be considered for this case. Under the special relationship test, the victim, Mrs. Foltz, was not in state custody or otherwise restrained at the time the injury-producing act occurred. Therefore, the police officer had no affirmative legal duty to act on behalf of Mrs. Foltz. *Fryman v. Harrison,* 896 S.W.2d 908, 909–10 (Ky. 1995).

I believe the trial court's decision was sound in granting summary judgment to the City and Officer Miller. I would affirm the Court of Appeals' opinion.

NOBLE, J., joins this dissent.