RENDERED: OCTOBER 1, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0830-MR

ALEKSANDRA HOFFMAN;
CARSON HOFFMAN; DONATELLO
HOFFMAN; SCARLETTE JANE
HOFFMAN; AND ZACHARY
HOFFMAN                                                          APPELLANTS

v.          APPEAL FROM JEFFERSON CIRCUIT COURT
            HONORABLE ANN BAILEY SMITH, JUDGE
                  ACTION NO. 16-CI-003157

MAURICE PATTERSON; CARLA
KIRBY; CASSANDRA
RICHARDSON; DEBBIE SPARKS;
AND YVETTE GENTRY                                                  APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND K. THOMPSON, JUDGES.

CALDWELL, JUDGE: This case involves the question of qualified immunity.

We find that the trial court properly determined that all Appellees save Maurice

Patterson were entitled to summary judgment[1] as they were all government actors who were not charged with violating any ministerial duty and are thus entitled to qualified immunity. We further find the trial court's analysis correct as to Appellee Patterson, that summary judgment was appropriate as to the claim against him, because no "special relationship" existed between him and the Appellants. Having found that the trial court's grant of summary judgment was appropriate as to each Appellee, we affirm.

## FACTS

On July 16, 2015, Tyler Morgan was in the custody of the Louisville Metro Youth Detention Services (LMYDS). A Jefferson District Court Judge had ordered that the juvenile be transported to a local hospital at which time he would be transferred into the custody of the Cabinet for Health and Family Services (CHFS). LMYDS youth program employee Maurice Patterson was assigned the task of transporting Morgan from the juvenile detention facility downtown to the suburbs where the hospital was located.

Patterson testified in depositions that he placed Morgan in the middle seat of the transport vehicle and secured him with a seatbelt as Morgan was handcuffed in front and shackled. Patterson ensured the side door of the vehicle was locked, got behind the steering wheel, and began the drive to the hospital. The

---

[1] Kentucky Rules of Civil Procedure (CR) 56.01.

relevant policies of LMYDS in effect at the time of Morgan's transport required only that the youth be handcuffed and shackled, that the youth not be seated directly behind the driver, that the driver have a two-way radio to communicate, that the youth be supervised at all times, and that the employee keep keys and equipment secure during transport.

Shortly after beginning the drive, the vehicle was stopped by a stoplight at the intersection of Grinstead Drive and Lexington Road. Before he could react, Patterson heard the click of the door lock and turned in time to see Morgan fleeing from the vehicle and running towards a gas station on the corner.[2] Patterson tried to grab Morgan to stop him but could not. He began a foot chase after Morgan.

When Morgan ran towards the gas station, he encountered an idling vehicle in the parking lot, jumped in the driver's seat, and took the wheel. Inside the car were Aleksandra Hoffman and her three minor children; Aleksandra's husband Zachary Hoffman was inside the convenience store purchasing supplies for a trip to nearby Cherokee Park where the family was planning on spending the afternoon.

---

[2] The vehicle was not equipped with rear door child locks, though some of the agency's other transport vehicles were so equipped. No policy in place at the time, though, required a vehicle equipped with rear door child locks only be used for transport of youth.

Aleksandra fought with Morgan over the steering wheel and tried to put the gearshift in park and employ the emergency brake to stop the vehicle. Morgan, fighting off Aleksandra, hit a vehicle while pulling out of the gas station parking lot. While the two struggled over control of the vehicle, it rolled into a retaining wall and a road sign. When Morgan began to drive up an interstate entrance ramp, Aleksandra again tried to gain control of the vehicle by grabbing the steering wheel, and in response Morgan head-butted her, sending her head slamming into the window, almost knocking her unconscious. The car continued to strike the retaining wall on one side of the ramp and a guard rail on the other side until it stalled. Once the car stalled, Morgan jumped out. Zachary, who had been on foot chasing the vehicle with his family inside, arrived and calmed his children and comforted his wife, and called 911.

Police responded to the scene and detained Morgan, assisted by Patterson. Morgan was charged with various criminal charges related to the theft of the vehicle and kidnapping and assault of the occupants and is serving a sentence of imprisonment for the crimes.

The Hoffmans filed suit against Patterson and his supervisors at LMYDS in their individual capacities. The trial court granted summary judgment for Patterson and his supervisors, finding that he owed no duty of care to the Hoffmans as no "special relationship" existed between them as required by

Kentucky law for finding liability for negligence against a government employee, and finding qualified immunity prevented the suit against Patterson's supervisors because there was no allegation that any of them violated any ministerial duty. We agree with each of those conclusions and affirm the trial court.

## STANDARD OF REVIEW

An appellate court employs a *de novo* standard of review on questions concerning the propriety of a trial court's ruling on a motion for summary judgment. *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019). In *Steelvest, Inc. v. Scansteel Service Center, Inc.*, the Kentucky Supreme Court explained that "the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." 807 S.W.2d 476, 480 (Ky. 1991). In reviewing such a motion, the trial court must view the facts "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor" and in so doing must examine the proof to ensure that no real issue of material fact exists. *Id.* "The movant should not succeed unless a right to judgment is shown with such clarity that there is no room left for controversy, and it is established that the adverse party cannot prevail under any circumstances." *City of Florence v. Chipman*, 38 S.W.3d 387, 390 (Ky. 2001), *as amended* (Feb. 26, 2001).

Thus, as factual findings are not at issue, the trial court's decision is granted no deference; review of a trial court's ruling on a motion for summary judgment is a matter of law. "A grant of summary judgment is reviewed *de novo* because factual findings are not at issue." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018), *review denied* (Mar. 6, 2019) (citing *Pinkston v. Audubon Area Community Services, Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006)).

## ANALYSIS

The Hoffmans filed an action alleging negligence and negligent infliction of emotional distress against Patterson and his supervisors, in their individual capacities. The trial court granted the LMYDS employees' motion for summary judgment, holding that they owed the Hoffmans no duty of care because no "special relationship" existed between them.

The case law is clear. Public officials owe the general public no duty of care unless the public official has some particular "special relationship" with the injured party.

> In order for the special relationship to exist, two conditions are required: 1) the victim must have been in state custody or otherwise restrained by the state at the time the injury producing act occurred, and 2) the violence or other offensive conduct must have been committed by a state actor.

*Chipman*, 38 S.W.3d at 392.

Here, the violence or other offensive conduct was not committed by a state actor. Morgan was not a state actor and his criminal behavior was the true cause of the damages suffered by the Hoffmans. In the *Ashby* case, *infra*, the estate of a woman beaten to death by her paramour sought recompense from the City of Louisville for failure of employees to arrest the paramour on outstanding assault charges under the theory that had he been arrested and detained, he would not have been able to have killed the victim. In holding that the city employees were not liable, the Kentucky Supreme Court stated:

> Here, it is undisputed both that Ashby was not in state custody when the violence was committed against her, and that her assailant was not a state actor. Hence, the tragic events below did not constitute an actionable due process violation under [*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989)]. Moreover, despite our abhorrence of the violence suffered by Ashby at the hands of her assailant, we cannot conclude that any basis exists for otherwise finding that a "special relationship" existed between Ashby and appellees so as to have created an affirmative duty of protection. *See, e.g.*, *Santy* [*v. Bresee*, 129 Ill. App. 3d 658, 661, 473 N.E.2d 69, 72 (1984)] (no special relationship was created between murder victims and the defendant law enforcement agency or officers where the victims had requested protection, the defendants were aware of the murderer's threats against the victims, and the defendants had promised to warn the victims of the murderer's release from custody. These circumstances "do not take the case out of the general rule that law enforcement agencies and officers do not owe individual citizens a duty to protect them from crime."). Hence, it follows that the trial court

did not err by failing to find that a "special relationship" existed between Ashby and appellees.

*Ashby v. City of Louisville*, 841 S.W.2d 184, 190 (Ky. App. 1992), *holding modified by Gaither v. Just. & Pub. Safety Cabinet*, 447 S.W.3d 628 (Ky. 2014).

The Hoffmans claim no special relationship exists between them and the Appellees which satisfies the requirement, but rather argue that "[e]very person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Isaacs v. Smith*, 5 S.W.3d 500, 502 (Ky. 1999). Such argument simply ignores a long line of cases that requires the special relationship be established before a finding of a duty by a government actor to the aggrieved. *See Fryman v. Harrison*, 896 S.W.2d 908, 910 (Ky. 1995) ("In order to establish an affirmative legal duty on public officials in the performance of their official duties, there must exist a special relationship between the victim and the public officials."); *Ashby*, 841 S.W.2d at 189 ("However, the general rule of thumb, in the absence of some 'special relationship,' is that a municipality or a law enforcement agency or official does not owe individual citizens a duty to protect them from crime.").

The Hoffmans argue that the decision of the Kentucky Supreme Court in *Pile v. City of Brandenburg* created an exception to the special relationship requirement. 215 S.W.3d 36 (Ky. 2006). In that case the Court held, in part, that an officer violated a statute applicable to all motorists which mandates that one

shall not leave the key in the ignition of an unattended vehicle. The officer violated that statute, which allowed a prisoner in custody to commandeer the vehicle in the officer's absence and cause a fatal accident. The Supreme Court held that the estate of the innocent decedent could proceed against the officer for his negligence.

Here, however, there was no statute which Patterson violated which is also applicable to persons not employed by LMYDS. In applying the proper standard and looking at the facts in the light most favorable to the Hoffmans, if we assume as they argue, that Patterson failed to properly secure Morgan in the vehicle to prevent his flight from the vehicle, such is the failure to follow a policy of a governmental entity, not a statute applicable to every person, as in *Pile*. Further, the Court did not hold in *Pile* that it was the leaving of a prisoner unattended in a vehicle which exposed the officer to liability. Rather, it was the leaving of keys in an unattended vehicle, or a vehicle attended only by a person in custody, which provided the basis of the negligence finding in *Pile*, and not, as the Hoffmans attempt to argue, the leaving of a prisoner unattended in a police vehicle. The argument fails.

In order to rely upon *Pile*, an aggrieved party must establish that the government actor violated a statute applicable to all, not a policy applicable only to government employees. *See* Kentucky Revised Statute (KRS) 446.070 ("[a]

person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation."). It is insufficient to rely upon agency policy because the gravamen of the holding in *Pile* is that it was the violation of the statute regarding leaving the key in the ignition, a violation of a statute imposing a duty on all motorists, which established negligence and liability.

## CONCLUSION

The trial court correctly ruled on the motion for summary judgment. Even looking at the facts in a light most favorable to the Hoffmans, they could not establish that any of the Appellees, much less Patterson, owed them a duty of care which was violated. While it may be that LMYDS adjusted their policies following this incident to require employees to take greater measures to prevent a repeat of a terrible event, such as this, to argue that such is indicative of liability is simply incorrect. First, such conclusion would have a chilling effect on the updating of policies when circumstances dictate such be done for the protection of the public and those in the custody of an agency such as LMYDS. Second, such simply ignores a long line of cases establishing the extent to which governmental entities and employees are liable to the public. While both the trial court and this Court approach the Hoffmans' case sympathetically, we are bound to follow the law. The decision of the trial court is affirmed.

THOMPSON, K., JUDGE, CONCURS.

ACREE, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Garry R. Adams
Abigail V. Lewis
Louisville, Kentucky

BRIEF FOR APPELLEE:

Michael J. O'Connell
Louisville, Kentucky

Kristie B. Walker
Louisville, Kentucky