Dominique BRISCOE, Appellant,

v.

AMAZING PRODUCTS, INC.; Ace Hardware & Rent–It Center; Joseph Brown; and Joyce Brown, Appellees.

No. 1998–CA–001289–MR.

Court of Appeals of Kentucky.

Feb. 18, 2000.

Case Ordered Published by Court of Appeals April 14, 2000.

Discretionary Review Denied by Supreme Court Aug. 16, 2000.

Teddy B. Gordon, Henry K. Jarrett III, Louisville, Kentucky, for Appellant.

Armer H. Mahan, Jr., Petersen S. Thomas, Louisville, Kentucky, for Appellee Amazing Products.

William P. Swain, William B. Orberson, Louisville, Kentucky, for Appellee Ace Hardware & Rent–It–Center.

BEFORE: COMBS, EMBERTON and GUIDUGLI, Judges.

*OPINION*

EMBERTON, Judge:

Dominique Briscoe appeals the summary dismissal of his products liability action against the manufacturer and distributor of a product known as "Liquid Fire" which was intentionally thrown in his direction by a youth attempting to injure his sister. In granting the motion of the manufacturer and distributor, the trial court reasoned that it was impossible for appellant to prevail at trial because his injuries were the result of an unforeseeable, superseding cause precluding, as a matter of law, a finding of liability on the part of the manufacturer and distributor. We agree and affirm.

On July 13, 1995, Joyce Brown, who was sixteen years old at the time, purchased from Ace Hardware a one-pint container of Liquid Fire, a drain cleaner manufactured and distributed by appellee, Amazing

Products. Later that evening, Brown placed about one-half of the Liquid Fire in a plastic container and took it with her when she went to the home of Helena Briscoe to confront her about an incident concerning Briscoe and her boyfriend. A physical altercation ensued and Helena's brother, the appellant Dominique Briscoe, came onto the porch and struck Brown. She then picked up the container of Liquid Fire and threw it in the direction of the door where Helena and Dominique were standing. Although Brown testified she intended to harm only Helena, most of the liquid struck Dominique. Brown was subsequently arrested and pled guilty to first-degree assault, second-degree assault and criminal mischief.

Dominique thereafter instituted this action against Amazing Products and Ace Hardware seeking damages for the substantial injuries he suffered in the attack by Joyce Brown.

His complaint against Amazing Products alleged: (1) that Liquid Fire is an inherently dangerous product; (2) that Amazing Products failed to provide adequate warnings of the severity of the injuries the product would cause when brought into contact with a person's skin; (3) that it failed to provide adequate warnings as to the proper use of Liquid Fire; and (4) that by placing an inherently dangerous product into the stream of commerce, Amazing Products is strictly liable for the injuries Liquid Fire caused Dominique Briscoe. For his claims against Ace Hardware, Dominique alleged that it negligently provided Liquid Fire to a minor without providing warnings as to the dangerous propensities of the product or as to its proper use. In dismissing the complaint, the trial court concluded that Amazing Products and Ace Hardware could not have reasonably foreseen or expected that the product would be used in a criminal attack and that the criminal conduct of Joyce Brown was an unforeseeable superseding cause of Dominique's injuries. We find no error in that determination.

Appellant's sole argument in this appeal is, that under the analysis required by modern tort law, Joyce Brown's criminal conduct was foreseeable by appellees, and therefore, did not constitute a superseding cause of such an extraordinary nature as to absolve them from liability for his injuries. We disagree.

A long line of Kentucky cases makes clear that a superseding cause is "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."[1] A superseding cause is a factor of such extraordinary, unforeseeable nature as to relieve the original wrongdoer of liability to the ultimate victim.[2] Like the trial court, we are convinced that Joyce Brown's intentional criminal conduct falls precisely in this category.

First, as to foreseeability, we find the analysis and rationale of the court in *Sturm, Ruger & Company, Inc. v. Bloyd,*[3] rejecting a similar claim against the manufacturer of a revolver, to be dispositive. In *Sturm,* the Kentucky Supreme Court concluded the manufacturer could not be held liable for damages incurred by a car wash employee when a customer's loaded revolver, with the hammer resting on live ammunition and without the safety engaged, discharged after falling out of the customer's car and striking the concrete floor. The *Sturm* court offered the following rationale for its decision:

Although a gun is inherently dangerous, it does not necessarily follow that a manufacturer is liable in damages to each person injured or killed by the use

1. Restatement (Second) of Torts § 440 (1965); *Donegan v. Denney,* Ky., 457 S.W.2d 953, 958 (1970).

2. *Montgomery Elevator Company v. McCullough,* Ky., 676 S.W.2d 776 (1984).

3. Ky., 586 S.W.2d 19 (1979).

of the weapon.... A gun, although inherently dangerous, does not come within the category of those substances or chattels which, by their very nature, are not only inherently dangerous but unsafe for general use. Was Ruger required to anticipate that the revolver would be carried under the floor mat of an automobile with all six chambers loaded and the hammer resting on live ammunition? We think not. *It is required of Ruger to anticipate reasonable use; that use being in keeping with the written warning. The dangerous propensity of the revolver was a condition rather than a cause.*

... Neither the manufacturing nor the design was a substantial factor in causing Bloyd's injury. Regardless of the design or manufacturing of the revolver, *the use to which it was put was the agency that brought about the injury complained of.* The manufacturer had no control over the gun. It was under the sole and exclusive control of Price, and his conduct in the handling of the revolver, as illustrated by the proof, was the substantial factor which caused the injury. (Emphasis added).[4]

The principles at work in *Sturm* would apply with even greater force where, as here, the intervening cause was an intentional criminal act. We are firmly convinced that appellees were not required to anticipate that Ms. Brown would select Liquid Fire as the weapon with which she would intentionally harm appellant. While it is not disputed that Liquid Fire is a

dangerous product, when used as intended and in keeping with its plainly displayed warnings, it is no more unsafe for general use than guns, knives, baseball bats, and other products which, when intentionally misused, have caused injury or death. Furthermore, the fact Liquid Fire has been used in previous attacks does not alter this result any more than would the well-known fact that guns, kitchen knives and baseball bats have been used to intentionally injure people.

As to the adequacy of the warning, we are admittedly at a loss as to what the manufacturer or distributor could have done to deter such conduct. Brown stated in her deposition that she was fully aware of the danger involved in using the product in the manner she intended, that friends begged her not to use the product as a weapon, and that knowing all this, she purposefully selected the product as the means for extracting revenge on appellant's sister. In our view, there is simply no manufacturer's warning which could prevent this type of intentional conduct.

The judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

---

4. 586 S.W.2d at 21–22.